CIVIL CLASS ACTION COMPLAINT

Plaintiffs, by and through undersigned counsel, after inquiry reasonable under the circumstances, on behalf of themselves and all others similarly situated, allege as follows:

Introduction

1. Plaintiffs (para-transit drivers) have initiated this action to redress violation by Defendants of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201, et. Seq.) and applicable state law(s). Class member asserts that Defendants unlawfully failed to pay them overtime wages and terminated their employment in retaliation for their complaints of overtime violations. The Philadelphia and Conshohocken facilities employs hundreds of para-transit drivers.

2. The United State Supreme Court recently held that, among other things, preparatory work duties that are integral and indispensable to the principal work activity are compensable under FLSA. See IBP, Inc. v. Alvarez, 126 S. Ct. 514 (2005). Alvarez arose in the donning and doffing context in a meat processing plant and its holding is directly applicable to the Philadelphia, Conshohocken facilities, e.t.c. operated by First Transit.

3. Plaintiffs and other similarly situated employees engage in numerous preparatory activities, as well as related work activities performed at the beginning and at the end of the work day, that are integral and indispensable for them to perform their duties. It is First Transit's policy and practice to deny earned wages and overtime pay to its drivers at its Philadelphia, Conshohocken, facilities e.t.c. Accordingly, under the holding of Alvarez, as well as under consistent rulings and interpretations of the United

1

States Department of Labor, Plaintiffs are entitled to compensation for the time they spend pre-shift and post-shift, pre-trip inspection and post-trip inspection. First Transit's deliberately failure to pay its drivers their earned wages and overtime compensation violates Fair Labor Standards Act ("FLSA") and Pennsylvania State Law.

4. This is an "off the clock" overtime case. Plaintiffs are all adults residing and/or working within the Eastern District Of Pennsylvania Judicial district and, during the relevant time period, drove a First Transit Mini Buses. At various times within the 3 years leading to the commencement of their case, each plaintiff drove a 40 hours a week "Straight Run and Swing Run," which consists of a morning, afternoon and night shift with / without a break in between. This case involves Pre-Trip, Post-Trip Inspections, O interval, Standby time, After Tour Time spent in line to fill up the gas tank, call in driver's start and finish time bus numbers and to get the codes from the Septa Dispatchers on the Radio, Time spent in line with First Transit Dispatchers to verify Driver's daily Tour Monies, Time spent to calculate the daily Tour (monies, tokens, trail-pass, scripts), time spent mapping out their tours, time spent in line to get manifests from First Transit dispatchers, time spent walking to and from parked buses, En-Route Trip Inspection and the pay rates e.t.c.

5. Defendants (First Transit) requires that drivers commerce each shift -- morning, afternoon and night shift – with Pre-trip inspection, and at the end of tour, driver must do post-trip inspection which takes between 20-30 minutes for each pre-trip and post-trip to complete . First Transit set aside time for drivers on their own time to conduct these inspections, and they don't get pay for this work. Drivers are required to examine about 40 distinct items, ranging from checking the tire pressure to testing the

radio intercom, Orbstar system. Drivers are "on the clock" the moment their bus leaves the yard, which means their morning, afternoon, and night pre-trip and post trip inspection are performed "off the clock."

6. Under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., Employees must be paid 1.5 times their regular rate for all hours over 40 worked in a week.

## Jurisdiction and Venue

7. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C § 201, and 216(b) and 28 U.S.C. § 1331.

8. This Court has jurisdiction over Plaintiffs' claims for breach of contract, and unjust enrichment pursuant to: (1) 28 U.S.C. § 1332(a) in that Plaintiffs are resident of a different state than the Defendants. (2) 28 U.S.C. § 1332(d) because the Plaintiffs are a residents of different state than the Defendants, and, (3) 28 U.S.C. § 1367 because the state claims are so related to the FLSA claim that they form part of the same case or controversy.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this jurisdiction.

## Parties

10. The foregoing paragraphs are incorporated herein in their entirety as if set Forth in full.

Plaintiffs are all adult individuals residing and/or working within this judicial district. At

3

different times within three years of their commencement of the litigation, each plaintiff has driven First Transit's minibuses (High Cab, Regular, Car Sedan ), "Straight Runs and Swing Runs" in circumstances in which their total weekly work time routinely equaled or exceed 40 hours.   All Plaintiffs routinely performed daily pre-trip and post-trip inspections, O interval time, and other work activities before and after each run, morning, afternoon, and night, though they were not paid for their inspections, e.t.c.   In this complaint, the word "drivers, bus driver, and para transit drivers" is used interchangeably with, and means, "plaintiffs."

 11. Defendants First Transit Inc., ("Defendant Transit") provides transportation Services, particularly through buses, throughout the United States and operates within 4201 Tacony Street, Philadelphia, Pennsylvania 19124, 1013 Conshohoken Road, Conshohocken, Pennsylvania 19428, and e.t.c.

 12. Defendants (Christopher Schukin, Anthony Sutton, and Wayne Horace Jones ("Defendants Schukin, Sutton, Jones Jr") were at all relevant times herein a general Manager, manager, and drive-cam supervisor), of Defendants Transit who oversees Plaintiffs, exerted control over Plaintiffs' compensation, and oversaw plaintiffs' retaliatory termination from Defendants.

 13. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

Factual Background

 14. The foregoing paragraphs are incorporated herein in their entirety as if set

forth in full.

15.     Plaintiffs were hired by Defendant Transit on or about March 2009-present, and began working for Defendant Transit as Drivers, from its locations 4201 Tacony Street, Philadelphia, Pa 19124; and  1013 Conshohocken Road, Conshohocken, Pa 19428 .

16.      Plaintiffs were employed with Defendant Transit as drivers, and they drove elderly, disabled,  wheelchairs, and infirmed individuals to local locations throughout Philadelphia, Montgomery, Buck, Delaware, and Chester Counties areas.

17.      Plaintiff were supervised by Defendants (Schukin, a general manager, Anthony Sutton, Safety manager, and Wayne Horace Jones Jr, Drive-Cam supervisor), of Defendant Transit, during the course and scope of their employment.

18.      First Transit has promulgated various work rules and policies covering plaintiffs including a (Employees' Hand book) Bus Operating Rules and Regulations Manual, and  (IPP Book) General Work Rules and Regulations.

19.     Attach at Tab A is a true and correct copy of First Transit (a Employee Hand Book)Bus Operations Rules and Regulations Manual now in effect.

21.     Attach at  Tab  B is a true and correct copy of First Transit IPP Book.

22.     Attach at Tab  C  is a true and correct copy of the Collective Bargaining Agreement that covered plaintiffs and all similarly situated drivers for most of the class periods.

23.     Under the Collective Bargaining Agreement, drivers were either given " Straight Runs" or Swing Runs."   A "Straight Run"  is a scheduled run for which a driver works with / without break and is paid from the start time to the finish time of the run.  A

5

"Swing Run" is a split shift, where a driver works a morning, afternoon and night shift, with an unpaid break in between (O interval).

24. According to First Transit work rules, the supervisors'/managers' would order, drivers must report for work not less than 2—3 hours to map out their tours , before the start of their scheduled "pull out" time, i.e., the time when the bus pull out of the yard and begins its schedule run. Drivers who fail to pull out on time are subject to discipline. Drivers are not getting paid for coming in 2-3 hours before their time to pull out.

25. Drivers arriving for the second half of their swing run must arrive at the scheduled pull-out time, and are not compensated if they arrive before the pull-out time.

26. Pursuant to First Transit's rules, bus drivers must perform a safety inspections before departure (pre-trip), and after arrival from tour (post-trip), to make sure the vehicle is in good working order. After every run, drivers are required to do post-trip and fill out an (DVI) Driver's Vehicle Inspection Report. The report, 1 copy must be kept on the bus at all times, while the other 2 copies must be given to dispatchers; failure to perform the safety check and to complete the report can lead to a summons under state law and Discipline.

27. Under First Transit's Pre-trip and post-trip inspection procedures, drivers must inspect their vehicles before departure using a "Check List/Quality Control Appearance Checklist ." This checklist must be signed and submitted to First Transit. Among other things, operators are required to check.

            For  Pre-Trip Inspection,  En route Inspection, and

                  Post-Trip Inspection

DRIVER'S VEHICLE INSPECTION

RO:_____
BUS #:---------------CONTRACT #:----------------------DATE:----------------HT:----  -----
! indicate by my signature that I have reviewed the previous operator's inspection report.

Operator Name (print):_____Operator Signature:_____
End Miles:_____Beginning Miles:_____Miles Driven:_____
End Time:_____Beginning Time:_____Time Worked:_____
 (inspect all items on DVL. Use "OK" if no defects found: use "X" if defect is found: use "NA" if not applicable. Turn in daily).

### VEHICLE EXTERIOR CHECKS
------------------------------------------

---All lights & lenses*                    ---Glass & mirrors*
---Turn signals & 4-way flashers*          ---Body damage/lettering
---Windshield wipers & washers             ---Under vehicle leaks*
---Door operation, seal intact/tight       ---Advertising sign securement
---Emergency door/windows/alarm            ---Lift door hold backs
---Tires, wheels & lugnuts*                ---Passenger lift operation

### VEHICLE INTERIOR CHECKS
-------------------------------------------

---Speedometer/tachometer/instruments      ---Steering operation
---Heaters, defroster & ventilation        ---Air conditioner
---All gauges*                             ---Fare box
---Horn/dashlights/hi/lo indicator*        ---Destination sign
---Interior lights                         ---Wheelchair securement straps & covers
---Operator seat operation & belt          ---Two-way radio operation
---Pass, seat securement & covering        ---Passenger chime or buzzer
---Hand rails/modesty panels               ---Backup alarm
---All required emergency equipment        ---Veh. Document/certification
---Exhaust noise                           ---Mobile data terminal

### BRAKE SYSTEM CHECKS
-----------------------------------

     (HYD?VAC)                                     (AIR)
---Operating not less than 15" VAC         ---Cut in pressure-------------PSI
---Low VAC warning_____inches              ---Cut out pressure------------PSI
---Brake pedal height (applied)            ---Static press. Loss P/B on—PSI
                                           ---Static press. Loss P/B on---PSI
                                           ---Applied pressure loss--------PSI
                                           ---Low pressure warning*-----PSI
                                           ---Auto pop out (park brake)--PSI
                                           ---Park brake hold

*indicates items to be checked on a "Mini Pre-Trip" inspection.

7

Operator Comments:_____
_____
_____
_____
Technician's
Comments:_____
_____
_____
_____
Technician's Signature:_____Date:_____

28. Each Pre-trip and post trip inspection, can take anywhere from 20-30 minutes to complete each inspection and fill out the check list. The inspection must be perform before each departure from the yard, and another inspection must be performed after the end of each tour. First Transit did not pay drivers to perform what First Transit said was voluntary work.

29. The effect, then, is that First Transit does not pay any of its drivers to conduct the full extent of their pre-trip and post-trip inspections. That is true because the drivers' obligations are greater—they must perform the pre-trip and post-trip inspections-but they are given no additional paid time to perform this additional requirement.

30. The net effect of First Transit's Policy and practice, instituted and approved by company General Managers, Operation Director, Safety Manager, is that First Transit willfully fails to pay overtime compensation and willfully fails to keep accurate time records in order to save payroll costs. First Transit enjoys ill-gained profits at the expense of its hourly employees.

31. First Transit has forced all drivers to work "off the clock" with respect to these pre-trip and post-trip inspections by requiring them to complete the inspections without compensating them for all time spent doing the inspections. First Transit's policy

is not to pay Plaintiffs for their time spent "donning and doffing," the work duties for which Plaintiffs are not paid for include, but not limited to :(1) drivers waiting in line to fill the gas tank, (2)drivers in line to give dispatchers (daily tour monies, trail-pass, tokens, script, how many pickup and drop off ) to verify the accuracy, (3)drivers waiting for Septa Dispatchers on the radio for codes, (4)drivers add up their (daily tour monies, tokens, trail-passes, scripts) before given them to First Transit dispatchers, (5)drivers mapping out their tour, (6)walking to and from Parked buses, and counting the hours worked for purpose of overtime. These activities for which Plaintiffs are not paid for are integral and indispensable to their principal job duties and/or are themselves principal duties, and also fall within the "continuous workday."

32. While, in the employ of Defendants, Class members were paid hourly.

33. During Class Members' period of employment with Defendants, they would at times work in excess of 40 hours per week.

34. During their period of employment, Class Members made multiple of complaints about not being paid overtime properly, and Defendant Transit's management, inclusive of Defendant Schukin, pay roll clerk / department, did not correct Defendants' State and Federal wage violations.

35. Plaintiffs expressed concerns to Defendants' management that their overtime were not given, not calculated properly, and that they were not identified as having worked overtime when they in fact worked overtime for Defendants.

36(A) Plaintiffs filed a complaint with the Commonwealth of Pennsylvania Department of Labor and Industry Bureau of Labor Law Compliance For Defendants' refuse to allow Class Members to review their personal records, including Overtime

Compensation records. The Class Members were terminated due to their Complaints of overtime violations and for engaging in protected activity under the FLSA.

36(B)   Defendants violated employees' and job applications' rights under the Fair Credit Reporting Act between September 2010-2011 in different ways as follows:

1. By obtaining criminal background check reports about employees and job Applicants without properly disclosing to them that a background check and credit reports may be obtained about them.

2. By obtaining criminal background check and credit reports about employees and Job applicants without first obtaining their written authorization; and

3. By firing employees or not hiring job applicants because of criminal background check reports and credit reports without providing them with a copy of their criminal background check report, credit report, and a summary of their rights under the Fair Credit Reporting Act.

Collective and Class Allegation

37.   Plaintiffs brings count 1 and 2, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), and 29 U.S.C. 201 e.t.c. on behalf of all other drivers since 2009 to present. In addition, Plaintiff ("Class Representative") bring count V and V1 (breach of contract and unjust enrichment), as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of Plaintiffs.

38.   All current and former drivers employed by defendants who work at Philadelphia, and Conshohocken, facilities, e.t.c. and were not paid for time spent donning and doffing required articles and walking to and from their parked buses, since

10

2009-present.

39. Plaintiffs seek relief on a collective basis challenging, among other FLSA violations, Defendants' practice of falling to accurately record all hours worked and failing to pay drivers for all hours worked, including overtime compensation. The number and identity of other Plaintiffs yet to opt-in and consent to the party. Plaintiffs may be determined from the records of defendants and potential class members may easily and quickly be notified of the pendency of this action.

40. These are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendants' action include, without limitation, the following:

41. Whether the drivers are compensated for time donning and doffing, such as, waiting in line to fill their bus tank, pre-trip and post-trip inspections, money calculation, walking to and from their parked buses, mapping out their tours, waiting in line to see the dispatchers for their manifest, standby time, waiting in line for the dispatchers to verify their daily trip (monies, tokens, trail passes, scripts), waiting in line on two way-radio to receive codes at the end of the shift, waiting in line on two way-radio to give starting mileage to the Septa Dispatchers at the beginning of the tour, time spent watching drive-cam with the drive-cam supervisor in his office, O Break (interval), and e.t.c.

42. Whether Defendants failed to keep accurate records of the actual time drivers spent performing compensable activities.

43. Whether Defendants' compensation policy and practice accounts for all of the time plaintiffs are actually working.

44. Whether the donning and doffing of certain required O interval constitutes and

11

integral and indispensable activity.

45. Whether Defendants' pay policies and practices compensate plaintiffs for all of he time spend working during the continuous workday.

46. Whether Defendants' compensation policy and practice accounts for all the time plaintiffs are actually working.

47. Whether Defendants' compensation policy and practice is illegal; and

48. Whether Defendants acted in good faith or willfully violated FLSA

First Cause of Action Violations of the FLSA

(Retaliatory Termination )- Against Both Defendants

49. The foregoing paragraphs are incorporated herein in their entirety as if Set forth in full.

50. Plaintiffs were terminated from Defendants for making complaints of overtime violations and for engaging in protected activity under the FLSA

51. Plaintiffs' discharge from Defendants for engaging in protected Activity under the FLSA constitutes unlawful retaliation under the FLSA.

See e.g. Lambert v. Ackerley, 180 F. 3d 997, 1003-05 (9th Cir. 1999) (en banc); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 44-45 (1st Cir. 1999); EEOC v. Romeo Comty. Sch., 976 F.2d 985, 989-90 (6th Cir. 1992); EEOC v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir. 1989).

Second Cause of Action Violations of the FLSA

(Unpaid Overtime Compensation) Against both Defendants

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiffs seeks all unpaid overtime compensation from the

commencement of their employment March 2009-present, inclusive of liquidated damages.

54. Plaintiffs therefore owed overtime compensation from the inception of their employment through the date of their termination and to the present time from Defendants.

> Third Cause of Action Violation of the Pennsylvania Minimum Wage Act ("PMWA"), (Unpaid Wages), Against Both Defendants.

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Class Members were not properly paid their overtime compensation during the duration of their employment, as specified supra. These actions as aforesaid constitute violation of the PMWA.

> Fourth Cause of Action Violation of the Pennsylvania Wage And Collection Law(s) (Unpaid Wages) Against Both Defendants.

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Class Members were not fully paid for all wages they were owed, while working for Defendants separate and apart from their owed overtime compensation, and they also had work hours that they worked not included within their pay.

WHEREFORE, Class Members pray that this Court enter an order providing that:

   A. Defendants are to be prohibited from continuing to maintain their illegal policies, practices, or customs of improperly paying and retaliating against employees and are to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

   B. Defendants are to compensate Class Members, reimburse Class Members, and make Class Members whole for any and all pay and benefits Class Members would have received had it not been for Defendants' illegal actions, including, but not limited to back pay, front pay, bonuses, and medical and other benefits. Class Members should be accorded those benefits illegally withheld from the date they first suffered wage violations and retaliation at the hands of Defendants until the date of verdict;

   C. Plaintiffs are to be awarded liquidated damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants from engaging in such misconduct in the future.

   D. Plaintiffs are to be accorded damages for emotional distress/pain and suffering and any and all other equitable and legal relief, injunctive and/or declaratory as the Court deems just, proper, and appropriate;

   E. Class Members to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable by federal and state law;

   F. Any verdict in favor of Class Members are to be molded by Court to Maximize the financial recovery available to Class Members in light of the caps on certain damages set forth in applicable federal law;

G.   An order permitting plaintiffs to give timely notice of this action to all persons who are employed as drivers at First Transit.  In the alternative, plaintiffs request that the court issue such notice.  Such notice should inform the recipients (Philadelphia, Conshohocken, in Pennsylvania, Union, Pennsauken, in New Jersey), and other states, that this civil action has been filed, the nature of this action, and their rights to opt-in to this lawsuit if they believe they suffered any of the violations alleged herein.

COUNT V:   Unjust Enrichment

(Brought Against Defendants by Class Members )

59.   Plaintiffs are entitled to damages equal to the mandated overtime premium pay within the 3years preceding the filing of this complaint, plus period of equitable tolling, because First Transit acted willfully and knew, or show reckless disregard of whether, its conduct was prohibited by the FLSA.

60.   Plaintiffs reasserts and realleges the allegations set forth in the above paragraphs.

61.   Plaintiff conferred a benefit upon Defendants by working on its behalf without compensation by plaintiffs.

62.   Defendants had appreciation or knowledge of the benefit conferred by plaintiffs.

63.   Defendants accepted and retained the benefit under such circumstances as to make it inequitable for defendants to retain the benefit without payment of its value.

WHEREFORE, plaintiffs demand judgment against First Transit and pray

for : (1)compensatory damages; (2) pre-judgment and post-judgment interest;(3) fees and costs; and such other relief as the court deems fair and equitable.

## COUNT V1: Breach of Contract

(Brought Against Defendants by Class Members)

64.     Plaintiffs reasserts and realleges the allegations set forth in the above paragraphs.

65.     At the time the Plaintiffs were employed by Defendants, they were hired to work at a fixed hourly wage rate.   Defendants, in turn, agreed to pay the Plaintiffs an expressly stated rate of pay that the employees would earn for each hour worked.

66.     For each hour Plaintiffs worked "off-the-clock" in their tenure with Defendants, they did not receive any compensation from Defendants.   This violated the parties employment agreements.

67.     Hours that the Plaintiff worked "off-the-clock" were at the direction and behest of Defendants, not voluntarily performed, but done with the expectation of earning their respective hourly wage.

68.    Defendants is liable to the Plaintiff for the damages incurred as a result of Defendants' failure to pay them for their off-the-clock-work.

WHEREFORE, Plaintiffs demand judgment against Defendants and pray for: (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) fees and costs; and (4) such other relief as the Court deems fair and equitable.

COUNT V11: Obtaining Background Check and Credit Report Without Plaintiffs' Consent Between September 2010-2011. (Brought Against Defendants By Plaintiffs.

69. Plaintiffs reasserts and alleges the allegations as follows:

70. Defendants are liable to the plaintiffs for the damages incurred as a result of Defendants' failure to properly disclosing to them that a Background Check and Credit reports may be obtained.

71. Defendants obtaining Criminal Background Check and Credit Reports about employees and job applicants without first obtaining their written authorization.

72. Defendants firing employees or not hiring job applicants because of Criminal Background Check and Credit Reports without first providing them with a copy of their Criminal Background Report and a Summary of their Rights under Fair Credit Report Act.

WHEREFORE, Plaintiffs demand Judgment against Defendants, and pray For (1) compensatory damages, (2) pre-judgment and post-judgment interest, (3) fees and costs; (4) such other relief as the court deems fair and equitable.

JURY DEMAND

Plaintiffs demand a trial by jury.

17

Date:   04 / 19 / 12                              Respectfully Submitted,


                                                ------------------------------
Lekan .K. F. Olalekan
4901 Stenton Avenue
Suite   C3
Philadelphia, Pa 19144
Tel: (215) 954-0738
E-mail:k.folalekanfirm@yahoo.com

IN THE UNITED STATE DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Gordon N. Grubbs, Earl Joyner Jr, | : | Civil Action |
| Marianne Jones, Jamar Gregory, | | |
| Willie Dean, | : | |
| and on behalf of a Class of other | : | |
| similarly situated Plaintiffs | : | No. |
| | : | Class Action Suit |
| | : | Collective Action Complaint |
| Plaintiffs | | |
| | | Jury Trial Demanded |

V.

First Transit Inc.,

600 Vine Street, Suite 1400
Cincinnati, OH 45202

And

Christopher Schukin, Robert Jones
Anthony Sutton, Wayne Horace Jones Jr,
Nakisha Jenkins, Crystal Barlow

600 Vine Street, Suite 1400
Cincinnati, OH  45202

Defendants

04/19/12